OPERA INCENTIVE COMPANY, LLC
10 Exchange Place, 11th Floor
Jersey City, New Jersey  07302

June 17, 2011

Greg Osinoff
38 Legends Circle
Melville, NY 11747

Re:   Grant Agreement – Opera Incentive Company, LLC
      2010 Option Plan (Class B Membership Interests) (the "Plan")

Dear Mr. Osinoff:

This letter agreement (the "Grant Agreement") is the Grant Agreement between Opera Incentive Company, LLC ("Incentive Company") and the addressee named above (the "Participant" or "You") that is referred to in the Plan referenced above.  This Grant Agreement memorializes the grant of options stated in your employment offer letter.  Capitalized terms that are used and not otherwise defined in this Grant Agreement will, unless otherwise stated, have the meanings given to them in the Plan document, a copy of which is attached as Exhibit A to this Grant Agreement.  For the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, You and Incentive Company agree as follows:

1.   Grant; Vesting; Exercise; Termination and Term of Plan.

(a)   Pursuant to this Grant Agreement, Incentive Company hereby grants to Participant, the number of Options set forth below, as defined in, and having the rights and restrictions set forth in, the Plan, which Options are exercisable for the number of Class B Units set forth below.  The Options granted hereunder have the exercise price (the "Exercise Price") per Option as set forth below:

| Number of Options | Exercise Price | Number of Class B Units |
|---|---|---|
| 8,000 | $45.00 | 8,000 |
| 22,000 | $50.00 | 22,000 |
| 24,000 | $60.00 | 24,000 |

The Class B Units shall have the rights and restrictions set forth in the Plan and in the Limited Liability Company Agreement.

MEI 11873302v.1

(b)    The Options granted to Participant under this Grant Agreement shall vest over the four-year period following March 1, 2011 (the "Vesting Start Date") in accordance with the following schedule:

| Anniversary of Vesting Start Date | Cumulative Vesting Percentage |
|---|---|
| 1st | 10% |
| 2nd | 40% |
| 3rd | 70% |
| 4th | 100% |

Notwithstanding anything to the contrary contained in this Grant Agreement, the Committee may accelerate the vesting of any Options granted hereunder in accordance with the Plan.

(b)    Participant may exercise any or all of the Vested Options granted hereunder by delivering written notice to Incentive Company accompanied by payment to Incentive Company equal to the Exercise Price multiplied by the number of Class B Units for which Options are being exercised. Such payment shall be made in accordance with the Plan unless otherwise agreed by Participant and Incentive Company. All Class B Units issued upon exercise of Options in accordance with the terms hereof shall be fully vested upon issuance.

(c)    If Class B Units are issued upon the exercise of Unvested Options, within 30 days after the date of exercise, Participant shall make an effective election with respect to the Class B Units with the Internal Revenue Service under Section 83(b) of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder in the form of Exhibit B attached hereto (the "83(b) Election") and shall provide Incentive Company with a copy of the 83(b) Election, along with evidence of timely filing thereof. For purposes of the 83(b) Election, the fair market value of each Class B Unit issued shall be its fair market value on the date the Unvested Option is exercised, as determined by the Committee.

(d)    The term of the Options granted hereunder shall expire on the date set forth below, and any of such Options (regardless of whether vested) that are not exercised by such date shall be forfeited and of no further force and effect:

Expiration Date:    June 16, 2021

The term and termination of the Plan shall be in accordance with the applicable provisions of the Plan. The Options granted hereunder are subject to termination or forfeiture, and the Grant hereunder may be revoked and cancelled by the Committee, in each case in accordance with the Plan. All Class B Units issued upon Participant's exercise of Options granted hereunder are subject to forfeiture and/or repurchase in accordance with the Plan.

2.    Limited Liability Company Agreement.    Upon the Participant's exercise of Options in accordance with the terms of this Grant Agreement, and Participant's execution of a joinder to the Limited Liability Company Agreement as a Class B Member, in the form attached

as Exhibit C hereto, Participant shall have all of the applicable rights and privileges of, and shall be subject to all restrictions applicable to, a Class B Member (as defined in the Limited Liability Company Agreement) under, and shall be bound by, the Limited Liability Company Agreement.

3.     Employment or Service Rights.   Participant acknowledges that nothing in this Grant Agreement shall confer upon Participant any right to continue in Service to the Company or any of its Affiliates, as an employee, contractor or otherwise, or shall interfere with or otherwise restrict in any way the Company's or its Affiliates' rights to terminate the Service of Participant at any time and for any reason, with or without Cause, to the same extent as such rights exist in the absence of this Grant Agreement.

4.     Participant's Representations and Warranties.   By countersigning this Grant Agreement, Participant represents and warrants to, and covenants with, Incentive Company as follows:

(a)     Participant understands that neither the Options nor any Class B Units to be issued upon the exercise thereof have been registered under the Securities Act of 1933, as amended, or any state securities laws (collectively, "Securities Laws"), in reliance upon an exemption from registration accorded for nonpublic offerings.  Participant further recognizes that such Options and Class B Units may not be sold unless they and the transaction in which they are to be sold have been registered under the Securities Laws or an exemption from registration is available for such sale.  Participant accepts that the Class B Units, if certificated, will bear a legend to that effect.  Further, Participant recognizes that Incentive Company has made no representations as to registration of the Options or Class B Units under the Securities Laws and that it is not anticipated that any such registration will ever occur.

(b)     Participant is acquiring the Options and, if applicable, Class B Units for his, her or its own account for investment and without a view to resale or distribution.  Participant will not sell, hypothecate, transfer or otherwise dispose of the Options or Class B Units or attempt to do so, unless they have been registered under the Securities Laws or, in the opinion of counsel reasonably acceptable to Incentive Company and its counsel, an exemption from registration is available.

(c)     The terms of the issuance of the Options and Class B Units to Participant were established by negotiations between Participant and the Company, and in connection therewith, Participant was given access to the relevant information he, she or it requested concerning the Company's and Incentive Company's condition and operations, and the opportunity to ask questions of and receive answers from the Company's and Incentive Company's representatives.  Participant is knowledgeable and experienced in the Company's and Incentive Company's business and in financial and business matters and, on the basis of the information Participant received concerning the Company's and Incentive Company's condition and operations, Participant is in a position to make an informed investment decision concerning the Options and the Class B Units issuable upon exercise thereof.

(d)     Participant hereby consents and agrees that, in addition to that described in Section 4(a) above and 4(f) below, Incentive Company may imprint on any certificate evidencing the Class B Units an appropriate legend or notification to the effect that such Class B Units are

MEI 11873302v.1

subject to this Grant Agreement and the Plan, are not freely transferable and may be transferred only in compliance with applicable Securities Laws. Participant further consents and agrees that Incentive Company may give appropriate "stop order" instructions in this regard to any transfer agent for the Class B Units.

(e)     Participant shall not offer for sale or sell the Options received hereunder or any Class B Units received upon the exercise thereof, or any interest therein, except in compliance with the Securities Laws. Participant shall indemnify Incentive Company and its Affiliates, together with its and their members, managers and officers, against any and all liabilities, losses, damages and expenses (including reasonable attorneys' fees) arising (directly or indirectly) from or in connection with any disposition of such Options or Class B Units or any interest therein, in violation of (or allegedly in violation of) applicable Securities Laws or regulations, including all such expenses incurred in connection with the defense against any such claim.

(f)     Participant hereby acknowledges that the Class B Units to be issued upon the exercise of Options granted hereunder are subject to the provisions of the Limited Liability Company Agreement and agrees to execute a joinder to the Limited Liability Company Agreement.

5.     Non-Transferability.  Participant may not transfer, sell, assign, pledge, encumber or otherwise dispose of any of its rights or interests under this Grant Agreement or the Plan, other than as expressly contemplated under the Plan.

6.     Remedies.  Without limiting any other right of the Committee or Incentive Company or its Affiliates as set forth herein or in the Plan, in the event of Participant's breach of any provision of this Agreement or any other agreement between Participant and Incentive Company (or any of its Affiliates), or failure to comply with any provision of the Plan, the Committee, in its sole discretion, may, at any time, terminate Participant's participation in the Plan. Upon such termination, all Grants to Participant, all class B Units received upon the exercise of Options, and all rights, privileges or payments to which Participant would otherwise be entitled under the Plan shall be subject to forfeiture, in the Committee's discretion. The Committee's decision to terminate Participant's participation in the Plan (and the associated forfeiture of Options granted to Participant or Class B Units issued to Participant upon exercise of such Options) shall not constitute an election of remedies and shall not limit or restrict the right or ability of the Committee, Incentive Company or any of its Affiliates to exercise any other right or remedy to which it may be entitled, whether at law or in equity.

7.     Notices.  Any notice, demand, offer or other written instrument required or permitted to be given hereunder shall be in writing, signed by the party giving such notice and shall be hand delivered or sent by facsimile (with a copy sent contemporaneously by mail as set forth herein), or sent postage prepaid, Certified or Registered Mail, Return Receipt Requested, or by reputable overnight delivery service, to Participant at its address set forth on the signature page hereto or to Incentive Company to the addresses set forth below. Either party shall have the right to change the place to which such notice shall be sent or delivered by similar notice sent in accordance with this provision. Any such notice, demand, offer or other written instrument shall be deemed given in accordance with this provision when so delivered personally; on the date

transmitted by facsimile, provided the sender receives printed confirmation of delivery; if mailed, on the third (3rd) business day following deposit with the U.S. Postal Service; or if sent by overnight courier, on the date of delivery as reflected in the records of such courier.

| | |
|---|---|
| If to Incentive Company: | With a copy (which shall not constitute notice) to: |
| Opera Incentive Company, LLC<br>10 Exchange Place, 11th Floor<br>Jersey City, NJ 07302<br>Attention: CFO<br>Facsimile: (646) 520-4503 | McCarter & English LLP<br>CityPlace I<br>185 Asylum Street<br>Hartford, CT 06103<br>Attention: Mitchell Fishberg, Esq.<br>Facsimile: (860) 724-3397 |

8.   Miscellaneous.

(a)   *Waivers.*  The waiver by any party of any breach or default of any provision of this Grant Agreement  shall not operate or be construed as a waiver of any subsequent breach or any waiver of any other right hereunder.  Any waiver hereunder shall be in a writing signed by the party against which it is sought to be enforced.

(b)   *Further Assurances.*  Each party agrees to execute and deliver such further documents and instruments as may be reasonably necessary or appropriate, or reasonably requested by the other party, to fully effectuate this Grant Agreement, the Plan and the intent hereof and thereof.

(c)   *Governing Law.*  The validity and interpretation of this Grant Agreement, and the grant of Options hereunder or issuance of Class B Units as contemplated herein, shall be governed exclusively by the laws of the State of Delaware without regard to its principles of conflicts of laws.  The parties hereby consent to the exclusive jurisdiction of the United States federal and applicable state courts located in the Southern District of New York with respect to any claim, controversy or dispute arising between the parties hereto.

(d)   *Severability.*  If any provision of this Grant Agreement is held to be invalid, illegal or unenforceable to any extent, the remainder of this Grant Agreement shall not be affected thereby and shall be enforceable to the fullest extent permitted by law.

(e)   *Complete Agreement.*  This Grant Agreement, the Plan and the Limited Liability Company Agreement constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all prior written or oral negotiations, commitments, representations, agreements or undertakings of any kind with respect thereto. All provisions of the Plan are hereby incorporated by reference and made a part of this Grant Agreement. Participant hereby acknowledges a receipt of a copy of the Plan.

MEI 11873302v.1

(f)     *Headings*.   The headings contained in this Grant Agreement are for convenience of reference only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Grant Agreement.

(g)     *Pronouns and Genders*.   The use of or reference to any pronoun or the corresponding gender herein is deemed to include and refer to any or all other pronouns or genders, as dictated by the context, and shall not be deemed to exclude any other pronoun or gender, as appropriate.

(h)     *Counterparts; Electronic Signatures*.   This Agreement may be executed in two or more counterparts (and by different parties in different counterparts), each of which shall constitute an original, but all of which taken together shall constitute one and the same instrument. This Grant Agreement may be executed by facsimile or other electronic signatures.

Please indicate your acceptance of the Grant described herein and the foregoing terms and conditions by signing the enclosed copy of this Grant Agreement and returning it to the Company. Thank you for your continued efforts on behalf of the Company.

Very truly yours,

OPERA INCENTIVE COMPANY, LLC

By: _____
     Arnab Gupta, Manager

The undersigned Participant hereby accepts the terms and conditions set forth in this Grant Agreement and acknowledges receipt of a copy of the Opera Incentive Company, LLC 2010 Option Plan (Class B Membership Interests)

_____
Greg Oshoff

Date: 8/3/11

Participant's address for notices:

38 Legends Circle
Melville, NY 11747

MB1 11873302v.1

**Exhibit A**

**Opera Incentive Company, LLC**
**2010 Option Plan (Class B Membership Interests)**

## OPERA INCENTIVE COMPANY, LLC OPTION PLAN

### PLAN HIGHLIGHTS

**Purpose of the Plan**

Opera is pleased to have adopted the Opera Incentive Company, LLC 2010 Option Plan (Class B Membership Interests) (the "Plan"). The Plan is being implemented to create long-term incentives for key employees of Opera Solutions, LLC and its affiliates (collectively, "Opera" or "Company") to continue to provide valuable services to Opera and to contribute to its profitability and growth. Eligible employees participating in the Plan will have the opportunity to acquire an indirect ownership interest in Opera and to potentially benefit from a sale or certain other transactions involving Opera.

*The Plan and the rights of Plan participants are further described in the Opera Incentive Company, LLC 2010 Option Plan (Class B Membership Interests) governing document (the "Plan Description"), the Limited Liability Company Agreement of Opera Incentive Company, LLC and the Grant Agreement that a Plan participant must sign. If there is any conflict or inconsistency between these Plan Highlights and any of those documents, the provisions of such other documents will be controlling. These Plan Highlights are not a legal document and do not contain all details of the Plan.*

**Eligibility**

Employees of the Company and its affiliates may be eligible to participate in the Plan, as determined by the Committee (as defined below).

**Administration of the Plan**

The Plan will be administered by a third party administrator, and a committee consisting of Opera Solutions, LLC's CEO and his additional designees (the "Committee").

**Options**

Participants in the Plan will receive options exercisable for units of Class B membership interests in Opera Incentive Company, LLC ("Class B Units"). Options will be granted under a Grant Agreement that the Plan participant must sign. The Grant Agreement will state the exercise price applicable to the options being granted.

**Vesting of Options**

All options granted under the Plan will generally vest during the Participant's employment over the 4-year period following July 1, 2010 (for the initial grants) or other "vesting start dates" indicated in each participant's Grant Agreement, on the following schedule:

| Anniversary of Vesting Start Date | Cumulative Vested Percentage |
|---|---|
| 1st | 10% |
| 2nd | 40% |
| 3rd | 70% |
| 4th | 100% |

MEI 11873373v.1

Vesting may also be subject to the recipient's continued service to the Company, as further described in the Plan. Options generally may not be exercised until they have vested. Any variations in the vesting schedule and terms will be stated in the Participant's Grant Agreement. The Committee has discretion to accelerate vesting of options at any time.

Upon a Company Transaction occurring prior to the vesting of all outstanding options, 50% of the unvested options then held by a Participant shall vest effective immediately prior to such Company Transaction. The Committee, at its discretion, may also accelerate the vesting of any additional unvested options.

All of a Participant's unvested options at the time of the Participant's cessation of service shall be forfeited.

**Exercise of Options**

Options granted under the Plan may be exercised by full payment of the exercise price in accordance with the Grant Agreement. The term during which options will remain exercisable will be stated in the Grant Agreement.

**Class B Membership Units**

Upon the option holder's exercise of options as described above and signing of the Limited Liability Company Agreement, the Participant generally will be treated as owning Class B Units. At such time, the recipient of Class B Units will become a member of Opera Incentive Company, LLC as a "Class B Member" (as defined in the Limited Liability Company Agreement).

*The Limited Liability Company of Opera Incentive Company, LLC further details the members' economic and other rights as members of the company. Both the Limited Liability Company Agreement and the Grant Agreement should be reviewed thoroughly, and Plan participants are encouraged to seek the advice of counsel in order to fully understand their rights and obligations under the Plan and related documents.*

**Rights of Class B Units**

Class B Unit holders have no rights to distributions of Opera Incentive Company, LLC assets (including cash) with respect to their vested Class B Units until a "Company Transaction" occurs, and only if a Company Transaction occurs within ten (10) years following effectiveness of the Plan. A "Company Transaction" is any of the exit events specifically enumerated in the Plan Description and the Limited Liability Company Agreement.

The net proceeds of such an event, after payment of and allowances for certain liabilities and obligations and distributions to the "Participating Members" (as this term is defined in the Limited Liability Company Agreement of Opera Incentive Company, LLC, and which does not include the Class B Members) of their actual invested capital, will be distributed or paid to the members of Opera Incentive Company, LLC as follows:

- First, to the members who have made capital contributions to Opera Incentive Company, LLC (which includes the Class B Members), until they receive a return of all such capital; and
- Second, to all of the members (including the Class B Members), based on their percentage ownership of all vested units.

Plan Highlights – Option Plan (Class B Units)

The payment of any amount to a Participant for Class B Units shall be contingent upon the unit holder executing an agreement, in a form approved by the Committee, containing a standard form of release and such other terms as the Committee shall determine.

Opera cannot guarantee that a Company Transaction will occur or when it may occur, the amount of the proceeds, or the amount of any funds that may be distributed or paid to Class B Unit holders. If a Company Transaction does not occur within ten (10) years of the effectiveness of the Plan (subject to the Committee's discretionary ability to extend this period), all unexercised options and all Class B Units will be forfeited and will no longer entitle the holders to the distributions described above; provided, however, at the end of the 10-year period, the Company may renew the Plan, issue new grants and/or extend the life of the existing grants.

Holders of Class B Units do not have any voting rights or any other rights with respect to the management of Opera Incentive Company, LLC.

**Cessation of Service to Opera**

The Plan is intended as an incentive to employees to continue in service to Opera. Accordingly, termination of service for any reason may result in relinquishment of a holder's options and/or Class B Units. If the holder of options or Class B Units is or becomes a "Bad Leaver" (as defined in the Plan), his or her options and Class B Units will be forfeited, with no payment by the Company. An option holder who is and remains a "Good Leaver" (as defined in the Plan Description) will be permitted to exercise options for six months following termination of his or her employment. As long as a Class B Unit holder is and remains a Good Leaver, the Committee will either permit the Class B Unit holder to retain the Class B Units, or Opera Incentive Company, LLC may repurchase the Class B Units. The Committee will determine the repurchase price for the Class B Units, which will be based on a valuation provided by an independent third-party valuation company for the fiscal year ending immediately prior to the termination of employment, provided that such price shall not be greater than the fair market value of the Class B Units on the date of repurchase.

**Certain U.S. Federal Income Tax Considerations**

The Class B Units are intended to be treated as "capital and profits interests" from a U.S. federal income tax perspective. Upon the exercise of an option, the participant generally will recognize gain for U.S. federal income tax purposes equal to the excess, if any, of the fair market value of the Class B Units received upon exercise over the exercise price paid for such Class B Units and will have a capital account in Opera Incentive Company, LLC equal to the fair market value of the Class B Units received. If Class B Units are issued in unvested form (which will only occur if permitted under the Grant Agreement) the recipient will be required, under the Grant Agreement, to make an election under Section 83(b) of the Internal Revenue Code.

**This summary is based upon laws, regulations, rulings and decisions now in effect, all of which may change, possibly with retroactive effect. Opera is not providing Plan participants with any accounting, legal, or tax advice. Participants in the Plan are urged to consult their own tax advisors regarding the U.S. federal, state, local and foreign income and other tax consequences of the grant, ownership, exercise and disposition of the options and Class B Units.**

**Questions About the Plan**
Questions concerning the Plan should be addressed to the Committee or the third party administrator of the Plan.  Plan participants are also encouraged to seek the advice of counsel for assistance in interpreting the provisions of the Plan and all related documents.

Plan Highlights – Option Plan (Class B Units)

**OPERA INCENTIVE COMPANY, LLC**
**2010 OPTION PLAN**
**(CLASS B MEMBERSHIP INTERESTS)**

I.   GENERAL PROVISIONS

   A.   PURPOSE OF THE PLAN

      This 2010 Option Plan (Class B Membership Interests) (the "Plan"), effective August 2, 2010 (the "Effective Date"), is intended to promote the interests of Opera Solutions, LLC, a Delaware limited liability company (the "Company"), and its Affiliates by providing eligible Persons with long-term incentives and the opportunity to acquire an indirect ownership interest in the Company.

      Capitalized terms used and not otherwise defined in this Plan document shall have the meanings assigned to such terms in the attached Appendix.

   B.   STRUCTURE OF THE PLAN

      The Plan consists of an option grant program under which eligible Persons shall be granted options to purchase restricted membership interests, designated as "Class B" membership units ("Class B Units"), in Opera Incentive Company, LLC ("Incentive Company"). Incentive Company will in turn hold a membership interest in the Company.  The Options granted under the Plan and the Class B Units issued upon the exercise of such Options shall be subject to the restrictions contained in this Plan document, each applicable Grant Agreement (as defined in Section II.A.) and in the Limited Liability Company Agreement.

   C.   ELIGIBILITY

      The Persons eligible to participate in the Plan shall be designated by the Committee (as defined in Section I.E.1.) and may include employees and non-employee consultants and advisors to the Company and its Affiliates (all referred to collectively as "Service Providers").

   D.   MEMBERSHIP INTERESTS SUBJECT TO THE PLAN

      1.   The Class B Units that may be issued upon the exercise of Options over the term of the Plan, together with the Class A Units and Class B Units that may be issued under the Other Incentive Plans, shall not at any time result in Incentive Company holding more than thirty-five percent (35%) of the outstanding Membership Interests in the Company.

      2.   Options may be granted any time following the Effective Date and until the termination of the Plan, as provided herein.  Class B Units shall be available for subsequent issuance upon the exercise of Options under the Plan to the extent Class B Units are forfeited or are repurchased by Incentive Company in accordance with the Plan.  All Class B Units issued

upon the exercise of Options hereunder shall be vested upon issuance, unless otherwise set forth in the Grant Agreement with respect to such Options.

3. If any change is made to the Membership Interests of the Company or Incentive Company by reason of any unit split, reverse split, unit distribution, recapitalization, reorganization, combination of units, exchange of units or other change affecting the Company's or Incentive Company's outstanding Membership Interests as a class without the Company's or Incentive Company's receipt of consideration, appropriate adjustments may be made to: (i) the maximum number and/or class of units issuable or for which any Options are exercisable under the Plan; or (ii) the number and/or class of units and the exercise price per unit in effect under each outstanding Option, in order to prevent the dilution or enlargement of benefits thereunder. No adjustment under this provision shall require Incentive Company to issue any fractional Class B Unit. Any such adjustment shall comply with the requirements of Section 409A of the Code.

## E. ADMINISTRATION OF THE PLAN

1. The Plan shall be administered by a third party administrator and by a committee consisting of the Chief Executive Officer of the Company (the "CEO") and his designee(s) (the "Committee"). Any or all functions otherwise exercisable by the Committee may be delegated to any one or more members of the Committee. Members of the Committee shall serve for such period of time as the CEO may determine and shall be subject to removal by the CEO at any time. The CEO may also at any time terminate the functions of the Committee and reassume all powers and authority previously delegated to the Committee.

2. The Committee shall have the power and authority (subject to the provisions of the Plan) to establish, amend and rescind rules and regulations relating to the Plan and to make all decisions and determinations under, and issue interpretations of, the Plan, any related documents and any outstanding Grants thereunder. Controversies or claims arising out of or related to the Plan may be determined unilaterally by and at the sole discretion of the Committee. All decisions, determinations and interpretations by the Committee shall be subject to the Committee's sole and absolute discretion and shall be final and binding on all parties who have an interest in the Plan or any Grant or Option thereunder.

## II. OPTION GRANT PROGRAM

### A. OPTION TERMS

Each Grant shall be evidenced by a written agreement or agreements ("Grant Agreement"), to be executed by the Optionee and Incentive Company, containing such terms and conditions and in such form, not inconsistent with the Plan, as the Committee shall determine.

1. Exercise Price; Exercise of Options.

(a) The exercise price for any Option granted under the Plan shall be set forth in the applicable Grant Agreement and shall in no event be less than one hundred percent (100%) of the fair market value as of the Grant date, of the Class B Unit(s) for which such Option is exercisable (as determined by the Committee), subject to adjustment pursuant to Section I.D.3.

2

(b) The exercise price shall be immediately due upon exercise of the Option and shall, subject to the provisions hereof and of the Grant Agreement, be payable on the Exercise Date in cash, by check made payable to Incentive Company, or by such other form of payment as is acceptable to the Committee.

(c) Upon exercise of a Vested Option (or an Unvested Option in addition to an election under Section 83(b) of the Code), the Optionee shall have, with respect to its Membership Interest in Incentive Company, an initial Capital Account (as defined in the Limited Liability Company Agreement) balance equal to the fair market value on the exercise date of the Class B Unit(s) received with respect to the Option exercised, as determined by the Committee.

2. <u>Rights of Class B Units</u>. Subject to the terms and conditions hereof, the Grant Agreement and the Limited Liability Company Agreement, each Member (as defined in the Limited Liability Company Agreement) holding Vested Class B Units shall have the right to receive upon the occurrence of a Company Transaction, and may receive upon the occurrence of a Partial Liquidation Event, a distribution or other payment in accordance with the Limited Liability Company Agreement in the amount, manner, and form of payment set forth therein.

3. <u>Vesting and Term of Options</u>.

(a) All Options shall initially be unvested. An Optionee shall have no Unit holder rights until and except to the extent that such Options have vested and are properly exercised and until such Optionee has complied with all applicable provisions hereof and of the Grant Agreement and the Limited Liability Company Agreement. For so long as an Optionee maintains continuous Service to the Company or any of its Affiliates, the Options granted to the Optionee date shall vest over the four-year period following July 1, 2010 (the "<u>Vesting Start Date</u>") in accordance with the following schedule:

| Anniversary of Vesting Start Date | Cumulative Vested Percentage |
|---|---|
| 1st | 10% |
| 2nd | 40% |
| 3rd | 70% |
| 4th | 100% |

Notwithstanding the foregoing, (i) the Committee may modify the vesting schedule of any Options granted hereunder, including for Options granted following the Effective Date, as shall be set forth in the applicable Grant Agreement, and (ii) upon a Company Transaction occurring prior to the vesting of all outstanding Options, 50% of the Unvested Options then held by an Optionee shall vest effective immediately prior to such Company Transaction, and the Committee may accelerate the vesting of any additional Unvested Options.

(b) If the Committee authorizes the exercise of an Option prior to the vesting thereof, the Class B Units issued upon exercise of such Option shall initially be unvested

3

and shall vest in accordance with the schedule set forth above, or such other schedule as is set forth in the applicable Grant Agreement.

(c)    The term of each Option shall be set forth in the applicable Grant Agreement. All unexercised Options, vested or unvested, will expire concurrently with the termination of the Plan in accordance with Section III.A, unless sooner forfeited, revoked or cancelled in accordance with the provisions of the Plan.

4.    Effect of Cessation of Service.

(a)    Unvested Options. All of an Optionee's Unvested Options at the time of such Optionee's Cessation of Service shall be immediately forfeited on the effective date of such Cessation of Service.

(b)    Vested Options.

(i)    Bad Leaver. If the Optionee is classified as a Bad Leaver at the time of his or her Cessation of Service or thereafter, all Vested Options held by such Optionee at the time of his or her Cessation of Service shall be immediately forfeited. An Optionee will be notified if the Optionee is determined to be a Bad Leaver following his or her Cessation of Service, and such Optionee's Options will be deemed forfeited as of the date of such determination or such other date as the Committee shall determine.

(ii)    Good Leaver. If the Optionee is not classified as a Bad Leaver at the time of his or her Cessation of Service or thereafter, and the Cessation of Service occurs prior to the tenth (10th) anniversary of the Effective Date (the "10th Anniversary of the Plan"), any Vested Options at the time of the Optionee's Cessation of Service shall be exercisable for a period of up to six (6) months after the effective date of such Cessation of Service (subject to extension by the Committee for any period not to extend beyond the expiration of the Option term). Any Options that are not exercised during such applicable period shall expire and be immediately forfeited at the expiration thereof.

(iii)    Additional Exercise Provisions. Subject to Section I.D.3., during the applicable post-Service exercise period, an Option may not be exercised for more than the number of Class B Units for which the Option was exercisable on the date of the Optionee's Cessation of Service. Notwithstanding the foregoing or anything in the applicable Grant Agreement to the contrary, the Committee may, at the time an Option is granted or at any time while the Option remains outstanding, permit the Option to be exercised during the applicable post-Service exercise period with respect to one or more additional installments in which the Optionee would have vested under the Option had the Optionee continued in Service.

(c)    Class B Units.

(i)    Bad Leaver. If the Optionee is classified as a Bad Leaver at the time of his or her Cessation of Service or thereafter, all Class B Units previously issued to such Optionee upon the exercise of Options hereunder shall be immediately

4

forfeited. An Optionee will be notified if the Optionee is determined to be a Bad Leaver following his or her Cessation of Service, and such Optionee's Class B Units will be deemed forfeited as of the date of such determination or such other date as the Committee shall determine.

(ii)     <u>Good Leaver</u>. If the Optionee is not classified as a Bad Leaver at the time of his or her Cessation of Service or thereafter, and the Cessation of Service occurs prior to the 10th Anniversary of the Plan, the Committee will either:  (1) permit the Optionee (or, in the case of an Optionee who dies while holding Class B Units or Vested Options that are subsequently exercised in exchange for Class B Units, the personal representative of his or her estate ("<u>Personal Representative</u>") or the Person(s) to whom the Options or Class B Units are transferred pursuant to the Optionee's will or the laws of inheritance ("<u>Heirs</u>")) to continue to hold such Class B Units in accordance with the terms and conditions of the Plan, in the same manner as an active Service Provider who is participating in the Plan; or (2) cause Incentive Company to repurchase the Class B Units from the Optionee (or, if applicable, the Personal Representative or Heirs), in accordance with Section II.A.5.

(iii)     <u>Company Transaction Following Cessation of Service</u>. If the Company does not repurchase an Optionee's Class B Units upon his or her Cessation of Service, and a Company Transaction occurs thereafter and prior to the 10th Anniversary of the Plan, then, provided the Optionee is a Good Leaver at the time of the Company Transaction, the Committee will at such time either:  (1) permit the Optionee (or, if applicable, the Personal Representative or Heirs) to participate in the Company Transaction in accordance with the terms and conditions of the Plan in the same manner as an active Service Provider who is participating in the Plan; or (2) cause Incentive Company to repurchase the Class B Units from the Optionee (or, if applicable, the Personal Representative or Heirs) in accordance with Section II.A.5.

If a Company Transaction does not occur prior to the 10th Anniversary of the Plan, the Optionee shall forfeit all of his or her Class B Units on the 10th Anniversary of the Plan, without payment of any consideration to such Optionee.

5.     <u>Repurchase of Class B Units; Repurchase Price</u>.

(a)     If Incentive Company repurchases Class B Units from an Optionee (or, if applicable, the Personal Representative or Heirs) pursuant to Section II.A.4.(c)(ii) or (iii), Incentive Company shall pay to the Optionee (or Personal Representative or Heirs) in exchange for such Class B Units the Repurchase Price, as set forth in Subsection (b), below, and in accordance with such additional terms and procedures as the Committee shall determine or as are set forth in the Limited Liability Company Agreement.

(b)     <u>Repurchase Price</u>. The price for Incentive Company's repurchase of Class B Units (the "<u>Repurchase Price</u>") shall be the value of such Vested Class A Units as of the December 31st immediately preceding such repurchase, as determined by the Committee based upon a valuation prepared by an independent third party valuation company; provided, that in no event shall such Repurchase Price be greater than the fair market value of such Class B

Units on the date of such repurchase. In determining the applicable Repurchase Price of an Optionee's Class B Units, the Committee may consider any factors, including without limitation the reason for the Optionee's Cessation of Service and his or her prior contributions to the Company. Any amount payable by Incentive Company to an Optionee (or, if applicable, the Personal Representative or Heirs) pursuant to this Section II.A.5. shall be payable over a term not to exceed five (5) years from the date of repurchase.

        (c)    Release.. Notwithstanding anything to the contrary in this Plan document, the payment of any amount by Incentive Company for the repurchase of Class B Units shall be contingent upon the Optionee (or, if applicable, the Personal Representative or Heirs) executing an agreement with Incentive Company, in a form approved by the Committee, containing a standard form of release pursuant to which such applicable Person releases all claims against Incentive Company and its Affiliates and its and their respective members, partners, owners, managers, officers, directors, employees and agents; non-competition and non-solicitation provisions; and such other terms as the Committee shall determine.

        6.    Revocation of Option Grants. Notwithstanding anything herein or in the Limited Liability Company Agreement to the contrary, if the Committee, in its good faith discretion, determines that performance or other factors warrant such action, it may at any time prior to a Company Transaction revoke and cancel any Grant (in whole or part) of Options to a Service Provider, before or after Cessation of Service, and regardless of such Service Provider's past, current or future classification as a Bad Leaver or a Good Leaver, and regardless of whether any of such Options have vested. Notwithstanding the foregoing, the Committee will not revoke or cancel any Grant of Options (or portion thereof) under this provision without first notifying the affected Service Provider of its intent to do so and affording such Service Provider the opportunity to discuss with the Committee or its designee the circumstances giving rise to such proposed revocation or cancellation.

        7.    Limited Transferability of Options and Other Rights. During an Optionee's lifetime, any Option shall be exercisable only by the applicable Optionee and shall not be assignable or transferable other than as contemplated herein or by will or the laws of inheritance. No other right under this Plan shall be subject to transfer, sale, assignment, pledge, encumbrance or charge except by will or the laws of inheritance.

        8.    Taxes. The Optionee acknowledges that it is his or her obligation to satisfy any and all federal, state and local taxes attributable to the issuance of Class B Units upon the exercise of an Option and the receipt of any benefit thereunder. The Optionee further acknowledges that it is his or her responsibility to consult his or her own tax advisor with respect to the issuance, holding and exercise of an Option and the specific tax consequences attributable to the execution of a joinder to the Limited Liability Company Agreement and the receipt of any benefit thereunder. Incentive Company may, in its discretion, withhold from any payment under the Limited Liability Company Agreement an amount sufficient to satisfy all current and estimated future U.S. federal, state, local and foreign withholding taxes required to be withheld by law with respect to the exercise of an Option and the issuance of a Class B Unit or any payment or distribution with respect thereto.

9.   Joinder to Limited Liability Company Agreement. The issuance of Class B Units under the Plan, and an Optionee's admission as a Member of Incentive Company, shall be subject to and contingent upon such Optionee's execution and delivery of a joinder to the Limited Liability Company Agreement, in such form as the Committee shall determine. Upon execution of a joinder to the Limited Liability Company Agreement as a Member, the Optionee shall have all of the applicable rights and privileges of, and shall be subject to all restrictions applicable to, a Member of Incentive Company pursuant to the Limited Liability Company Agreement.

B.   COMPANY TRANSACTION OR PARTIAL LIQUIDATION EVENT

1.   In the event of a Company Transaction, Incentive Company shall give each Optionee notice of the Company Transaction and:  (a) if applicable, of the acceleration of the vesting of such Optionee's Options pursuant to Section II.A.2.(a), (b) the period in which any Vested Options of such Optionee may be exercised and (c) if such Optionee's Class B Units will be repurchased by Incentive Company pursuant to Section II.A.4.(c)(iii). All Options that are not exercised within such designated period shall be forfeited upon the occurrence of a Company Transaction, unless the vesting of such Options is accelerated pursuant to Section II.A.3.(a).

2.   In the event of a Partial Liquidation Event, Incentive Company may distribute certain proceeds thereof in respect of the Vested Class B Units, in accordance with the terms of the Limited Liability Company Agreement.

3.   The grant of Options or issuance of Class B Units under the Plan shall in no way affect the right of Incentive Company, the Company or any of their Affiliates to adjust, reclassify, reorganize or otherwise change its capital or business structure or to merge, consolidate, dissolve, liquidate or sell or otherwise dispose of all or any part of its business or assets.

C.   CANCELLATION AND RE-GRANT OF OPTIONS

The Committee shall have the authority to effect, at any time and from time to time, with the consent of each affected Optionee, the cancellation of any or all outstanding Options under the Plan and to grant in substitution new Options covering the same or different number of Class B Units but with an exercise price per unit based on the fair market value per Class B Unit of the units subject to the new Options, on the new Option grant date. In no event shall any cancellation and grant cause the new grant to be an impermissible substitution or extension pursuant to Treasury Regulations Section 1.409A-1(b)(5)(v).

III.   MISCELLANEOUS

A.   TERMINATION OF THE PLAN

The Plan shall terminate upon the earliest of: (i) the 10th Anniversary of the Plan; (ii) the consummation of a Company Transaction, except to the extent assumed or replaced by a successor company or Affiliate thereof, or (iii) the Committee's determination that the Plan shall be terminated. All Options and all Class B Units outstanding upon termination of the Plan shall

7

continue to have full force and effect, subject to the provisions of the Plan, the applicable Grant Agreements and the Limited Liability Company Agreement.

B.    AMENDMENT OF THE PLAN

The Committee shall have complete and exclusive power and authority to amend or modify the Plan in any or all respects. However, no such amendment or modification shall adversely affect the rights and obligations with respect to Options or Class B Units outstanding at such time under the Plan unless the affected Optionee consents to such amendment or modification. In addition, certain amendments may require member approval pursuant to applicable laws and regulations.

C.    NO EMPLOYMENT OR SERVICE RIGHTS

Nothing in the Plan shall confer upon any Optionee any right to continue in Service or interfere with or otherwise restrict in any way the Company's or its Affiliates' rights to terminate the Service of any Service Provider at any time and for any reason, with or without Cause, to the same extent as such rights exist in the absence of the Plan.

D.    409A

The Company intends that this Plan shall be exempt from the provisions of Section 409A of the Code, to the extent applicable, pursuant to the provisions of Treasury Regulations Section 1.409A-1(b)(5) or any similar provisions. Should any changes to the Plan be necessary for the Plan to continue to be exempt from the provisions of said Section 409A, the Committee may amend this Plan to add to or modify its provisions accordingly.

E.    GOVERNING LAW

The validity and interpretation of this Plan, and the grant of Options and issuance of Class B Units hereunder, shall be subject to and shall in all respects comply with applicable Delaware law relating to such grants or to the number of Class B Units that may be beneficially owned or held by any Optionee.

F.    PRONOUNS AND GENDER

The use of or reference to any pronoun or the corresponding gender herein is deemed to include and refer to any or all other pronouns or genders, as dictated by the context, and shall not be deemed to exclude any other pronoun or gender, as appropriate.

8

# APPENDIX

The following definitions shall be in effect under the Plan:

Affiliate means, with respect to any Person, any other Person controlling, controlled by or under common control with such Person.

Bad Leaver means:  (i) a Service Provider whose Cessation of Service is for Cause; or (ii) an Optionee who takes any action after the effective date of his or her Cessation of Service that the Committee determines would constitute grounds for Cessation of Service for Cause if the Optionee were then an active Service Provider of the Company or any of its Affiliates.

Cause, for purposes of a Service Provider's Cessation of Service, shall have such meaning as is set forth in any applicable employment, consulting or other applicable retention agreement between such Service Provider and the Company or any of its Affiliates or, if not so defined, shall mean that such Service Provider's Cessation of Service is the result of:  (i) such Service Provider's willful and continuing failure to perform his or her duties to the Company (or any applicable Affiliate); or the Service Provider's gross negligence in the performance of such duties, as determined by the Committee; (ii) the Service Provider's failure to follow any lawful directive in connection with its duties to the Company (or any applicable Affiliate), as determined by the Committee; (iii) the Service Provider's breach of or default under any employment, consulting or other retention agreement, or any confidentiality, noncompetition, non-solicitation, invention assignment or similar agreement, with the Company or any of its Affiliates; (iv) the Service Provider's willful breach of a duty to the Company or any of its Affiliates or its or their respective clients, willful disregard of the Company's or its Affiliates' rules, policies or procedures, or an act of embezzlement or fraud involving the Company or any of its Affiliates or its or their respective clients, in each case as determined by the Committee; (v) the Service Provider's misconduct with regard to the Company or any of its Affiliates that has materially damaged, or is reasonably likely to materially damage, the business or reputation of the Company or any of its Affiliates, as determined by the Committee; or (vi) the Service Provider's conviction of, or plea of *nolo contendere* to, a felony or any other crime involving moral turpitude or dishonesty. References in this definition to a Service Provider shall, to the extent a Service Provider is not a natural person, be deemed to mean and include all officers, directors, managers, members, partners, employees, subcontractors or other agents of such Service Provider.

Cessation of Service means (i) with respect to any employee of the Company and/or any of its Affiliates, termination of such employee's employment with the Company and its Affiliates, regardless of the reason for such termination (or if any reason exists), or (ii) with respect to any contractor or other advisor to the Company and/or any of its Affiliates, the termination or expiration of the applicable contract or other arrangement pursuant to which such Person provides Service to the Company and/or such Affiliate or the cessation of such Service Provider's provision of Service; any such Cessation of Service described in clause (i) or (ii) to be deemed effective upon the

effective date of such termination of employment or of such other termination, expiration or cessation.

Class A Units means Class A Units issuable pursuant to the Opera Incentive Company, LLC 2010 Restricted Equity Plan (Class A Membership Interests) or the Opera Incentive Company, LLC 2010 Advisor Restricted Equity Plan (Class A Membership Interests).

Code means the Internal Revenue Code of 1986, as amended.

Company Transaction means (i) a merger or consolidation to which the Company is a party (other than one in which the members of the Company prior to the event own a majority of the voting power of the outstanding Membership Interests of the surviving or resulting Person), (ii) a sale, lease, transfer or other disposition of all or substantially all of the assets of the Company, (iii) the sale, exchange or transfer by the Company's members of voting control with respect to the Company (other than to Affiliates of the Company), in a single transaction or series of related transactions or (iv) a firm commitment underwritten public offering of units of Membership Interests in the Company; provided, however, that the offering described in clause (iv) shall not be considered to be a Company Transaction if the Committee elects that such event shall not be a Company Transaction.

Exercise Date means the date on which Incentive Company shall have received written notice of an Optionee's exercise of any Vested Options pursuant to the Plan.

Good Leaver means a Service Provider whose Service with the Company or any of its Affiliates has terminated or expired under circumstances in which such Service Provider is not classified as a Bad Leaver, and such Service Provider has not subsequently been classified as a Bad Leaver.

Grant means any grant of Options under the Plan.

Limited Liability Company Agreement means the Limited Liability Company Agreement of Incentive Company, dated as of July 30, 2010.

Membership Interests means membership interests in the Company or Incentive Company, as dictated by the context, regardless of how such membership interests are designated or of the rights, preferences and restrictions associated with such membership interests.

Option means any Option granted pursuant to the Plan.

Optionee means any Person to whom an Option is granted under the Plan.

Other Incentive Plans means the Opera Incentive Company, LLC 2010 Restricted Equity Plan (Class A Membership Interests), 2010 Advisor Restricted Equity

ii

Plan (Class A Membership Interests) and 2010 Advisor Option Plan (Class B Membership Interests).

Partial Liquidation Event means a sale, lease, transfer or other disposition of all or substantially all of the assets comprising a division or particular line of business of the Company, or of any particular asset or group of assets; provided, however, that such applicable event shall not be considered to be a Partial Liquidation Event if the Committee elects that such event shall not be a Partial Liquidation Event.

Person means any natural person, corporation, partnership, limited liability company, trust, unincorporated organization or other legal entity.

Service means the provision of services to the Company or any of its Affiliates by any Person in the capacity of a Service Provider, unless otherwise defined in the applicable Grant Agreement.

Unvested Options means Options that have not vested in accordance with the terms of the Plan or any Grant Agreement pursuant to which such Options were granted.

Vested Class B Units means Class B Units that have vested in full in accordance with the terms of the Plan or any Grant Agreement applicable to the Options exercised therefor.

Vested Options means Options that have vested in full in accordance with the terms of the Plan or any Grant Agreement pursuant to which such Options were granted.

iii

**Exhibit B**

<u>I.R.C. SECTION 83(b) ELECTION FORM</u>

This statement is intended to constitute an election made by the undersigned under the provisions of Section 83(b) of the Internal Revenue Code of 1986, as contemplated by Treasury Regulation §1.83-2. In accordance therewith, the following information is provided:

1. The undersigned's name, address and taxpayer identification number is as follows:

   Name: _____

   Address: _____

   _____

   _____

   Taxpayer Identification
   Number: _____

2. The property with respect to which this Section 83(b) election is being made is:

   _____ (NUMBER) Class B Units ("<u>Units</u>") of Opera Incentive Company, LLC, a Delaware limited liability company, with an address at 10 Exchange Place, Jersey City, NJ  07302
   (Employer Identification Number: _____).

3. The Units were transferred to the undersigned on_____ (DATE) and the election is being made for the taxable year ended December 31,_____ (YEAR).

4. The Units are subject to the following restriction:

   The Units are subject to restrictions of transferability pursuant to a Grant Agreement dated _____, 20__ by and between the undersigned and Opera Incentive Company, LLC and the Limited Liability Company Agreement of Opera Incentive Company, LLC, dated July 30, 2010.

5. The fair market value of the Units at the time of transfer was $_____.

6. The amount paid for such Units was: $_____.

7. Copies of this statement have been furnished to the persons as required by Treasury Regulation §1.83-2(d) and, also as required, will be filed with the undersigned's income tax return for the year ending December 31, _____ (YEAR).

   _____ (SIGNATURE)
   Print Name:
   Date:

MEI 11873302v.1

**Exhibit C**

**Form of Joinder to Limited Liability Company Agreement (Attached)**

## JOINDER AGREEMENT

The undersigned hereby agrees, effective as of the date hereof, to become a party to that certain Limited Liability Company Agreement, dated as of July 30, 2010, by and among Opera Incentive Company, LLC, and the other parties named therein (as it may be amended from time to time, the "Agreement") and for all purposes of the Agreement, the undersigned shall be included within the term Class B Member (as defined in the Agreement).  The address and facsimile number to which notices may be sent to the undersigned is as follows:

Address:_____

Facsimile No.: _____

Date: _____

Number of Class B Units:_____


Name:_____